UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | |
| § | CRIMINAL NO. H-12-272-SS |
| RUSTY EUGENE DUKE § | |
| a/k/a "Duke" § | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas and Tim S. Braley, Assistant United States Attorney, David N. Karpel, Trial Attorney, Organized Crime and Gang Section, United States Department of Justice, and the Defendant, RUSTY EUGENE DUKE a/k/a "Duke," and the Defendant's counsel, Robert A. Jones, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.  The Defendant agrees to plead guilty to Count One of the Second Superseding Indictment. Count One charges defendant with Conspiracy to Participate in Racketeering Activity in violation of Title 18, United States Code, Section 1962(d). The Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.  The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1962(d), is imprisonment for life and/or a fine of not more than $250,000. Additionally,

the defendant may receive a term of supervised release after imprisonment of up to five (5) years. Title 18, U.S.C. §§ 3559(a)(1) and 3583(b)(1). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. §§ 3559(a)(1) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine and Reimbursement

4. Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release; if any is ordered.

5. Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

6. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he is requested to do so. In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn

financial statement immediately following his sentencing.

**Waiver of Appeal**

7. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The Defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding.

8. In agreeing to these waivers, the Defendant is aware that a sentence has not yet been determined by the Court. The Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. The Defendant further understands and agrees that the *United States Sentencing Guidelines(USSG)* are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, the Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea

agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

(a) Pursuant to Rule 11(c)(1)(C), FED. R. CRIM. P., the parties agree that any term of imprisonment imposed by the Court in this case should not exceed 216 months. Pursuant to Rule 11(c)(5), FED. R. CRIM. P, if the Court rejects this plea agreement, the Defendant will be allowed to withdraw his guilty plea.

(b) If the Defendant pleads guilty to Count One of the Second Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will dismiss Count Seventeen of Second Superseding Indictment;

(c) At the time of sentencing, the United States agrees not to oppose the Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the Defendant accept responsibility as contemplated by the Sentencing Guidelines;

(d) If the Defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the Defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the Defendant's offense level is 16 or greater;

## United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office; and,

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a).

4

## Sentence Determination

12. The Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a). The Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which the Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. The Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, the Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the Defendant, the United States, and the court all agree.

    (b)    At a trial, the United States would be required to present witnesses and other evidence against the Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn,

       the Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

14.     Defendant is pleading guilty because he *is* guilty of the charge contained in Count One of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

**<u>ENTERPRISE</u>**

The ABT is a race-based Texas state-wide organization operating inside and outside of state and federal prisons throughout the State of Texas and the United States. The ABT was established in the early 1980's within the Texas Department of Criminal Justice (TDCJ). The ABT modeled itself after and adopted many of the precepts and writings of the Aryan Brotherhood, a California-based prison gang that was formed in the California prison system during the 1960's. The ABT offers protection to "white" inmates if they join the criminal enterprise. Membership in the ABT is for life. They adhere to the motto that "God Forgives, Brothers Don't" (GFBD). The ABT promotes "whites" as the superior race.

The ABT has a written charter and by-laws ("Constitution"). The Constitution lists the duties and responsibilities of the organization and membership and is considered the foundation of the organization.

In the past, the ABT was primarily concerned with the protection of white inmates and

white supremacy/separatism. Over time the ABT has expanded its focus more towards a criminal enterprise to include illegal activities for profit. In some cases, the ABT has made alliances with prison gangs of other ethnicities to aid in unlawful activities for profit.

Once released from incarceration, ABT members/prospects/associates continue to engage in criminal activity on behalf of the enterprise. Members are required to remain loyal to the ABT and to work to further the goals of the ABT through criminal activity. One of the goals of the ABT is to recruit new members. Members are required to sign a "Blind Faith Commitment," in which they agree to do anything directed or requested by their superiors without question. Failure to comply may result in severe beatings, known as beat-downs, or death. These violent acts are carried out primarily by other ABT members and sometimes by their prospects and associates.

The ABT enforces its rules and promotes discipline among its members/prospects/associates through murder, attempted murder, conspiracy to murder, assault, robbery and threats against those who violate the rules or pose a threat to the enterprise. The ABT also uses murder and the threat of murder to maintain a position of power inside and outside of prison. Maintaining power and avoiding loss of stature motivates the ABT to commit violent acts against individuals believed to be disrespectful toward the ABT. Those members/prospects/associates who do not follow the orders of the ABT are also subject to murder, as is anyone who uses violence against an ABT member/prospect/associate. ABT members/prospects/associates who cooperate with law enforcement authorities are also subject to murder.

ABT members are recruited from both inside and outside of prison. In order to be considered for ABT membership, a person must be sponsored by another ABT member. Once

sponsored, a prospective member must serve an unspecified term, wherein he is referred to as a prospect, while his conduct is observed by the members of the ABT. During this period, the prospect studies and learns the ABT Constitution and the "prospect schooling guide." While a prospect, the individual is considered part of the ABT family and entitled to the full protection of the enterprise. The prospect is also subject to the rules and orders of the enterprise. If the prospect's conduct during the probationary period is deemed satisfactory he is admitted by a vote of the majority of all ABT members present.

ABT members often use the term "Church" when referring to gang meetings. The conducting of criminal activity by ABT members is often discussed at "Church." These meetings are generally held in locations where secrecy can be maintained.

In addition to members, the enterprise includes those closely affiliated with the ABT, who are called "associates." While females are not allowed to become members of the ABT, those who associate with the ABT and engage in criminal activity for the benefit of the ABT are often referred to as "featherwoods." Associates who do not fulfill their obligations to the ABT are sometimes subject to violence, including murder.

Members, and oftentimes associates, are required to follow the orders of higher-ranking members, often referred to as a "direct order" or "D.O." In particular, members are required, when ordered, to kill or assault without hesitation. Members and associates who do not fulfill their obligations to the ABT are themselves subject to violent acts, to include murder or assault.

In Texas there are two competing ABT factions. Each faction follows the leadership of their respective faction. Each faction has similar chain of command structures and has a defined militaristic ranking structure. ABT members refer to the gang as the "Family." The

hierarchy of each faction is broken up into separate TDCJ regions. There are five TDCJ regions. Each region has the following chain of command: general, major, captain, lieutenant, sergeant-at-arms, and soldier. The ranking structure remains constant; however, there are frequent personnel changes (promotions, demotions, terminations) within the rank structure. Each faction of the ABT is governed by a five person "Steering Committee" (Wheel). Each Wheel member (who holds the rank of General) is responsible for one of five separate regions within the State of Texas. Each Wheel member is responsible for appointing his subordinate, ranking member (Majors) within his respective region. Each Wheel member also appoints an inside Major (in-custody member) and an outside Major (referred to as someone in the "free world") in his respective region. These Majors, in turn, are responsible for appointing their subordinate Captains and Lieutenants who, in turn, appoint their sergeants. Wheel members typically remain in place regardless of custody status unlike other ranking members who typically lose rank when their custody status changes.

The purpose of the enterprise include the following:

a. Preserving and protecting power, territory, and profits through the use of intimidation, violence, threats of violence, assaults, robbery, and murder;

b. Promoting and enhancing members'/prospects'/associates' activities;

c. Keeping non-members and its members/prospects/associates in fear of the enterprise through threats of violence and actual violence.

d. Enriching the members/prospects/associates of the ABT through robberies, counterfeiting, and drug trafficking.

The means and methods by which the members/prospects/associates conduct and participate in the affairs of the ABT criminal enterprise include the following:

a. ABT members/prospects/associates commit, and attempt and threaten to commit, acts of violence, including assault and murder, to protect and expand their criminal operations and to maintain their status.

    b.    ABT members promote a climate of fear through violence and threats of violence.

    c.    The ABT rules dictate that an attack against a member will be considered an attack on the enterprise as a whole. All ABT members are required to counter any such attack.

    d.    ABT members promulgate rules as documented in their Constitution to be followed by all participants, including the rule that any ABT member assisting law enforcement authorities must be killed.

    e.    To enforce the rules and promote discipline, ABT members murder, attempt to murder, assault, and threaten those participants in the enterprise who violate rules or orders, or who pose a threat to the enterprise.

    f.    To generate income, ABT members engage in illegal activities under the protection of the enterprise, including narcotics trafficking, fraud, counterfeiting, trafficking in firearms, and other illegal activities.

    g.    For protection and armed combat, ABT members acquire, carry and use firearms.

    h.    To perpetuate the enterprise, ABT members attempt to conceal from law enforcement the existence of the ABT, the identity of its participants, and the way in which it conducts its affairs.

    i.    To keep secret their activities, ABT members communicate using codes and hidden messages, and use a network of hubs to relay messages among members/prospects/associates.

The above-described enterprise, Aryan Brotherhood of Texas, through its members, prospects, and associates, engaged in racketeering activity as defined in 18 U.S.C. § 1959(b)(1) and 1961(1), namely acts involving (i) murder, in violation of Texas Penal Code § 19.02, (ii) arson, in violation of Texas Penal Code § 28.02, (iii) kidnaping, in violation of Texas Penal Codes §§ 20.03 and 20.04, (iv) robbery, in violation of Texas Penal Code § 29.02, and (v) narcotics trafficking, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

ABT Gang members purchased methamphetamine from contacts in Mexico, transported the drugs into the state of Texas, and sold them to associates in the Dallas/Fort Worth and Houston areas and throughout the state of Texas.

## FACTS OF THE OFFENSE

The Defendant agrees and stipulates that he knowingly conspired and agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the ABT enterprise, that is a group of individuals associated in fact, through a pattern of racketeering activity, which was engaged in and the activities of which affected, interstate and foreign commerce, and that the ABT enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the ABT enterprise. The Defendant further agrees and stipulates that the ABT enterprise, through its members and associates, engaged in racketeering activity, namely, acts involving narcotics trafficking in violation of federal law and acts involving arson and murder in violation of Texas state law, as charged in the Second Superseding Indictment.

The Defendant admits to the following:

a. At least as of 2009, and continuing to the date of the Second Superseding Indictment, the Defendant was an active member of the ABT in the Dallas/Fort Worth area.

b. On or about July 27, 2011, the Defendant aided and abetted ABT gang member Jason Yates, aka "Rowdy" (Yates) to kill fellow ABT gang member Jason Head (Head). The Defendant wanted retribution against Head because he believed Head was responsible for attempting to steal drugs from the Defendant and, in an attempted robbery, pointed a gun at the Defendant's father. In furtherance of the conspiracy, Yates and a female companion confronted Head at his home in the Dallas/Fort Worth area. Upon entering the residence, Yates pointed a handgun at Head's face and pulled the trigger. After an apparent misfire, Yates attempted to shoot Head two more times, but the handgun misfired on each occasion. A struggle ensued over the weapon, but

Yates was able to secure the gun away from Head. Yates and his female companion then fled the scene. Yates obtained a different handgun and before he could return and kill Head, he was arrested on unrelated charges.

c. On multiple occasions from 2010, and continuing to the date of the Second Superseding Indictment, the Defendant conspired with fellow ABT gang members and others to sell methamphetamine. During this period, the Defendant possessed with the intent to distribute at least 350 grams of methamphetamine.

The facts set forth herein, are a summary of the Defendant's actions, and are not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the Defendant's plea to the offense set forth in the Indictment.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this plea agreement, then may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

16. Whether the Defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Restitution, Fines, and Forfeiture

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) by the deadline set by the United States, or if no deadline is set, prior to sentencing. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Forfeiture

21. Defendant stipulates and agrees that the property listed in the First Supplement to the Notice of Forfeiture in the Second Superseding Indictment is subject to forfeiture because such property constitutes or is derived from proceeds obtained directly and indirectly from the racketeering activity made the basis for the guilty plea to Count One in the Second Superseding Indictment, and Defendant agrees to the forfeiture of that property. In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

   a. 1996 Baja Boat, Hull TX1881HU;

   b. 2005 Sunny Brook Toy Hauler, Vin 4UBSU0V3551V44120;

   c. $20,743.00 U.S. Currency;

   d. 2005 Chevy C5500 Truck, Vin 1GBE5E1265F504629;

   e. 300mg of Testosterone;

   f. 100mg of Methenolone; and

   g. 52 tablets of Ephedrine.

The Defendant also agrees that the 300mg of Testerone, 100mg of Methenolone, and 52 tablets of Ephedrine are subject to forfeiture as facilitating property of the offense of conviction in Count One of the Second Superseding Indictment.

22. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Rule 32.2(b)(4)(A), Fed.R.Crim.P.

24. Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

26.   This written plea agreement, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant and his counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

27.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on __8/13/14__, 2014.

_____
Rusty Eugene Duke
Defendant

Subscribed and sworn to before me on __8/13/14__, 2014.

UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

15

APPROVED:

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Tim S. Braley
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9391
Facsimile: (713) 718-3301

_____
Robert A. Jones
Attorney for Defendant
(713) 526-1171

Leslie R. Caldwell
~~MYTHILI RAMAN~~
~~ACTING~~ ASSISTANT ATTORNEY GENERAL

By: _____
David N. Karpel
Trial Attorney
Organized Crime and Gang Section
U.S. Department of Justice (202)307-5715

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | |
| § | CRIMINAL NO. H-12-272-SS |
| RUSTY EUGENE DUKE § | |
| a/k/a "Rusty" § | |
| Defendant. § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          _08/13/14_____
ROBERT A. JONES                                           Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____            6-13-2014
RUSTY EUGENE DUKE                          Date
Defendant