UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:12-cr-272-7 |
| RUSTY EUGENE DUKE, | ) | |
| Defendant. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

Rusty Eugene Duke ("Duke"), by and through the undersigned counsel, respectfully submits this Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.

### I. BACKGROUND

On February 20, 2013, Duke was charged in an 18-count Second Superseding Indictment with one count of Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. § 1962(d), and one count of Attempted Murder, in violation of 18 U.S.C. § 1959(a)(5). (Docket Entry "DE" 469). On August 13, 2014, Duke plead guilty to Count One of the Second Superseding Indictment pursuant to a Plea Agreement. (DE 978).

In exchange for his guilty plea, Duke agreed to waive his right to appeal the sentence imposed, and the right to contest his conviction or sentence by means of any post-conviction proceeding. (DE 978 ¶ 7). The United States agreed that pursuant to Fed. R. Crim. P. 11(c)(1)(C), the sentence imposed should not exceed 216 months. (DE 978 ¶ 10(a)). Further, the Government agreed to dismiss Count 17 of the Second Superseding

Indictment which charged Duke with the attempted murder of Jason Head. (DE 978 ¶ 10(b)).

Pursuant to U.S.S.G. § 2E1.1, the Base Offense Level for Count One requires each underlying offense be treated as if a separate count of conviction. Duke's underlying offenses were divided into two Racketeering Acts: the attempted murder of Jason Head and conspiracy to distribute methamphetamine. (PSR ¶ 56).

Racketeering Act 1–attempted murder of Jason Head–established a Base Offense Level of 33. (PSR ¶ 57). Racketeering Act 2–conspiracy to distribute methamphetamine–received a Base Offense Level 30. (PSR ¶ 63). Under § 3D1.4, the "Pseudo Counts" were grouped which resulted in a Total Offense Level 36. (PSR ¶ 75). The total offense level was raised to 37 pursuant to U.S.S.G. § 4B1.1. (PSR ¶ 76). After an adjustment for acceptance of responsibility, Duke's Guideline range was 262 to 327 months.

On December 9, 2014, Duke appeared for sentencing. The Court denied Duke's objections to the PSR and just as it prepared to impose its sentence, Duke interjected.

THE COURT: I sentence you, Mr. Duke, to 216 --

THE DEFENDANT: Excuse me, sir. I'm almost for sure that [the AUSA] in the objections kind of hinted that instead of [the offense level] being a 33 or a 37, that he would recognize a 19 instead, because there was no one harmed.

(Sent. Tr. at 9-10). Duke was referring to the Base Offense Level for Count One which was determined to be 33 based on the attempted murder of Jason Head. (PSR ¶ 57). Duke believed the Offense Level would start at 19 based on defense counsel's misunderstanding of the Guideline calculations.

MR. JONES: [The AUSA] had indicated he would start at 19 rather than my seven that I suggested. I suggested in my objections that it be a level seven rather than what probation indicated and, of course, his

2

| | |
|---|---|
| | response is in his -- to my objections was that it would be 19. He can address that. |
| MR. BRALEY: | In the defendant's objections, he suggests that the Jason Head attempt to kill should score as a simple assault and he suggested that the guideline range be seven. I simply pointed out that under the law, that is not possible. |

(Sent. Tr. at 10). As the Government correctly stated, U.S.S.G. § 2E1.1(a) requires the Base Offense Level to be the greater of 19 or the offense level applicable to the underlying racketeering activity.

As sentencing proceeded, Duke again interjected:

> I'm sorry, Your Honor. I don't mean to interrupt you, but sitting down with -- I thought we had some type of idea of where I would be at, and the overt act in this plea agreement would be the drugs. I have been led to think this by Braley over here. I don't understand. The main thing we are focusing on here is the attempted murder, Your Honor, and the degree of my involvement here, I mean, I knew after the fact.

(Sent. Tr. at 12). Here it becomes evident that Duke was under the assumption that the dismissal of attempted murder charge meant that it would not be used against him in the racketeering conviction. The Court then referred back to the plea colloquy, to which defense counsel replied: "In the factual basis for the plea, Your Honor, it better spells out what his intent and what his acts were, and he did not adopt *per se* that." (Sent. Tr. at 13). Further, Duke then indicated that he was led to believe that he would be sentenced to around ten years.

| | |
|---|---|
| THE COURT: | You wouldn't have pled guilty with a cap of 216 months if you realistically thought you were facing 10 years. |
| THE DEFENDANT: | Sir, that's all the more reason that I would want to sign this, if this man insinuates that you are looking at the 10-year range. |
| | … |

3

> I expected to get sentenced off of are these drugs right here, Your Honor.

(Sent. Tr. at 15). Ultimately, Duke was sentenced to a term of 216 months and 5 years supervised release. On December 11, 2014, the Judgment of Commitment Order was filed memorializing Duke's sentence. Duke did not appeal his sentence.

## II. TIMELINESS

When a defendant does not file a direct appeal from the judgment, the conviction becomes final for the purposes of the commencement of the § 2255 one-year statute of limitations period upon expiration of the 14-day period in which the defendant could have filed a direct appeal of his conviction and/or sentence. *United States v. Scruggs*, 691 F.3d 660, 669 (5th Cir. 2012). Accordingly, Duke's judgment of conviction became final 14 days after December 11, 2014, or on December 25, 2014. Pursuant to § 2255(f)(1), Duke has one year from that date and his § 2255 motion is timely if filed on or before December 25, 2016.

## III. PLEA WAIVER

As a threshold matter, the appeal waiver contained in Duke's Plea Agreement cannot be used to bar the instant motion. The Plea Agreement's Waiver of Appeal stipulates as follows:

> Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The Defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding.

(DE 978 ¶ 7). However, the Fifth Circuit has held that such waivers do not extend to guilty plea challenges.

> We will follow this wealth of authority and hold that an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself. We agree with *Jones* and *Mason* that an impermissible boot-strapping arises where a waiver is sought to be enforced to bar a claim that the waiver itself-or the plea agreement of which it was a part-was unknowingly or involuntary.

*United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). As Duke will further argue below, Duke entered into the Plea Agreement unknowingly and involuntarily as a result of ineffective assistance of counsel. Because Duke's claim challenges the validity of the plea agreement itself, the appeal waiver cannot be used to bar this § 2255 motion.

## IV. STANDARD OF REVIEW

The seminal case for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984), wherein the Supreme Court established the standard for evaluating claims of ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient." *Id*. at 687. To be "deficient," counsel's performance must be "outside the wide range of professionally competent assistance." *Id*. at 688. Next, "the defendant must show that the deficient performance prejudiced the defense." *Id*.at 687. Moreover, to show "prejudice" a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." *Id*. at 694. The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). And, the *Strickland* "prejudice" requirement

5

focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id*. at 59.

## V. ARGUMENT

**GROUND ONE: DUKE'S PLEA IS INVALID AS A RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL**

The Sixth Amendment requires the effective assistance of counsel at all critical stages of the criminal process. *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012), including the plea proceeding. The record in this case clearly shows that Duke did not have sufficient understanding of charges and consequences to voluntarily and intelligently enter his guilty plea.

The test for determining the validity of a plea is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses available to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Moreover, "It is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement…." *Libretti v. United States*, 516 U.S. 29, 50 (1995). As such, for a decision to plead guilty to be exercised voluntarily, knowingly, and intelligently, a defendant must have "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal citations omitted).

At sentencing it became apparent that Duke was not adequately counseled regarding the charge he plead guilty to and consequences thereof. As stated above, Duke showed that he was led to believe that the racketeering offense would be driven by the

6

methamphetamine, and that the dismissal of Count Seventeen meant he would not be charged with the attempted murder of Jason Head. Further, Duke misunderstood the racketeering Guideline calculations due to his attorney's supposition that the Base Offense Level could be below 19, which is factually incorrect. Moreover, Duke was mislead to believe that these factors would ultimately result in a sentence in the 10-year range.

The Fifth Circuit has held that an attorney's underestimation of a defendant's sentencing exposure results in deficient performance.

> *One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty. An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea. Apprising a defendant about his exposure under the sentencing guidelines is necessarily in part of this process. A defendant cannot make an intelligent choice about whether accept a plea offer unless he fully understands the risks of proceeding to trial.* "Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland."

*United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (emphasis added).

The record clearly shows that Duke was not aware of the consequences of his guilty plea to the racketeering charge. Duke erroneously believed that the dismissal of the attempted murder count meant it would not be included in the underlying racketeering activity. It was counsel's duty to advise Duke of the potential Guideline calculations and sentencing exposure. In addition, counsel's inaccurate objection to the racketeering offense level further evidences Duke's lack of understanding the Guideline range. As the *Herrera* court explained, "[a]n attorney who underestimates his client's sentence exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or

7

going to trial." *Id*. at 581. Duke was aware that his sentencing exposure was capped at 216 months, however, the above misunderstanding mislead Duke to believe he would receive a substantially lesser sentence.

Regarding representations made by a defendant at a guilty plea hearing, the Supreme Court made clear that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Nevertheless, the Court went on to say that:

> What *Machibroda* and *Fontaine* indisputably teach, however, is that the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable. In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a *per se* rule excluding all possibility *that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others* as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Id*. at 74-75 (emphasis added). Duke only plead guilty because he was mislead to believe that the attempted murder of Jason Head would not be included in the racketeering offense, and his sentence would be in the 10-year range. Counsel was ineffective in failing to adequately advise Duke of his sentencing exposure and the consequences of his plea. Thus, Duke's plea does not represent an intelligent and voluntary choice among the alternatives. But for counsel's misadvice, there is a reasonable probability Duke would not have plead guilty and proceeded to trial instead.[1]

### VI. CONCLUSION

The Court should grant an evidentiary hearing on Duke's claims of ineffective assistance of counsel.

---

[1] A declaration from Duke reflecting same will be filed with the Court forthwith.

Respectfully submitted,

/s/ Jeremy Gordon
Jeremy Gordon
Jeremy Gordon, PLLC
1848 Lone Star Road, Suite 106
Mansfield, TX 76063
Tel: 972-483-4865
Fax: 972-584-9230
Email: Jeremy@gordondefense.com
TX Bar No. 24049810

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was duly filed and served upon counsel of record, via the Court's CM/ECF system, this 22nd day of December, 2015.

/s/ Jeremy Gordon