# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **United States of America,** | § | |
| **Respondent/Plaintiff** | § | |
| | § | |
| **vs.** | § | **Criminal No. 4:12-cr-272-S2-7** |
| | § | |
| **Rusty Eugene Duke,** | § | **Civil No. 4:15-cv-3692** |
| **Petitioner/Defendant** | § | |

## GOVERNMENT'S RESPONSE TO PETITIONER'S 28 U.S.C. §2255 MOTION AND MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America ("the Government"), by and through the United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, files this Response to Petitioner  Rusty Eugene Duke's Motion for Relief under 28 U.S.C. § 2255 and Motion for Summary Judgment. The Government would show the Court as follows:

## I.

## JURISDICTION

Rusty Eugene Duke challenges the judgment imposed by this Court on December 9, 2014, and entered by the District Clerk on

1

December 12, 2014. (D.E.[1] 1281, 1405.)

Duke did not file an appeal. When Duke did not file a timely notice of appeal from the judgment, his conviction became final upon the expiration of the fourteen-day period for filing a notice of appeal after the entry of judgment. *See United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008); Fed. R. App. P. 4(b)(1)(A) (requiring a criminal defendant to file a notice of appeal within fourteen days of entry of judgment or order from which appeal is taken). Duke's judgment of conviction became final on December 26, 2014, the last day on which he could have filed a direct appeal.

Duke had one year from the date on which the judgment of conviction became final to file his §2255 motion. 28 U.S.C. §2255(f)(1). The instant §2255 Motion was filed on December 22, 2015. (D.E. 1453.) The motion is timely. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2255.

---

[1] "D.E." refers to Docket Entry in the criminal docket for Case no. 5:12-cr-272, styled *United States v. Sillers, et al.,* filed in the Southern District of Texas, Houston Division, unless otherwise indicated.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Statement of Facts Underlying the Conviction.

1. <u>Offense Conduct.</u>

Rusty Eugene Duke, along with his co-defendants, were members of the Aryan Brotherhood of Texas ("ABT"), a "whites-only" prison-based gang, primarily operating in Texas.  (D.E. 1191 "PSR" ¶¶6-8.) ABT was an elaborately organized criminal organization involved in narcotics trafficking, gambling, murder, arson, and assault.  (*Id*. ¶¶6-8, 18)  Rusty Eugene Duke held a leadership role in ABT and directed others to carry out unlawful activities in furtherance of ABT's illegal enterprise.  (*Id*. ¶¶18, 26.)   In July 2011, Duke ordered an ABT subordinate, Jason Yates, to kill Jason Head, who Duke believed was responsible for a burglary of Duke's father's residence.  (*Id*. ¶¶27-30.) Jason Yates forced his way into Jason Head's house and aimed a gun at his head and shot it several times but the gun mis-fired.  (*Id*.)  Yates then left and told Duke that the gun mis-fired and he could not kill Head.  (*Id*. ¶28.)  Duke gave Yates another gun to kill Head.  (*Id*.)

In February and April 2011, FBI received information that Duke was distributing methamphetamine. (*Id.* ¶31.)   In August 2011, law enforcement arrested someone leaving a stash house associated with Duke who was found with methamphetamine. (*Id.* ¶33.)   In September 2011, law enforcement arrested another individual leaving Duke's house, and he was in possession of methamphetamine. (*Id.* ¶35.)   On November 9, 2012, Duke was arrested at his house in the instant case. (*Id.* ¶40.)   Law enforcement seized over $20,000 in cash and drug paraphernalia.   (*Id.*)   FBI also received information from various sources that Duke engaged in long-term distribution of methamphetamine, had subordinates working below him distributing the methamphetamine, and was selling about one pound of methamphetamine a day. (*Id.* ¶¶31-43.)

**B.   Course of Proceedings and Prior Disposition.**

1. Pre-Trial and Re-arraignment.

In May 2012, a federal grand jury in Houston, Texas, returned a one-count indictment against Terry Glenn Sillers for conspiracy to participate in racketeering activity, in violation of Title 18, Untied

4

States Code, Section 1985. (D.E. 1.)  In October 2012, a federal grand jury returned a seventeen-count superseding indictment against 34 additional individuals, including Rusty Eugene Duke, for various counts of racketeering conspiracy.  (D.E. 31.)  In February 2013, a second superseding indictment with eighteen counts was returned.  (D.E. 469.) Duke was charged in Count 1 for conspiracy to participate in a racketeering enterprise, namely, multiple acts involving murder, arson, kidnapping, robbery and narcotics trafficking, beginning on or about 1993 and up to October 2012, in violation of Title 18, United States code, Section 1962(d), and in Count 17, attempted murder of Jason Head on July 27, 2011, in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.  (*Id.*)

On August 13, 2014, Petitioner appeared before the Court with his trial counsel Robert A. Jones ("Counsel") and pleaded guilty to Count One of the second superseding indictment, racketeering conspiracy, under the provisions of a written plea agreement.  (D.E. 978, 1403.)

After being sworn under oath, Duke affirmed to give only true

answers.   (D.E. 1403 at pp. 1-2.) Duke told the Court that he and Counsel had discussed his case more times than he could keep count. (*Id*. at p. 5.)   Pressed further, Duke stated to the Court that he had spoken to Counsel more than ten times about his case.   (*Id*.)     He affirmed that Counsel had specifically discussed with him how the federal sentencing guidelines would apply in his case and that he had answered all his questions. (*Id*. at p. 6.)  Duke stated that Counsel had answered all his questions, that he had done everything he had asked him to do, and that he was fully satisfied with the advice and counsel that Counsel had provided him.  (*Id*.)

The Court reviewed the maximum sentence Duke could receive as to Count One, which was life in prison, and Duke affirmed that he understood the maximum penalty.  (*Id*. at p. 7.) The Court emphasized that no determination had been made about what his sentence would be, and that Duke would be bound by his guilty plea as long as the Court sentenced him to 216 months or less, as stated in the plea agreement. (*Id*. at p. 8.)   Duke affirmed that he understood his sentencing exposure.  (*Id*.)  He also stated on the record that he had

spent more than five hours reviewing and discussing the written plea agreement with Counsel.  (*Id*. at p. 9.)

The Court then summarized the post-conviction rights that Duke was giving up under the terms of the written plea agreement, that Duke had agreed to give up the right to appeal the sentence and the right to attack the conviction or sentence.  (*Id*. at pp. 10-11.)   Duke affirmed that the Court had accurately summarized the terms of the written plea agreement with the government, as he understood them.  (*Id*. at p. 12)

In particular, paragraph 8 of the written plea agreement that Duke signed provided:

> 8. In agreeing to these waivers, the Defendant is aware that a sentence has not yet been determined by the Court.  *The Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court.*  The United States does not make any promise or representation concerning what sentence the Defendant will receive.  The Defendant further understands and agrees that the United States Sentencing Guidelines (USSG) are "effectively advisory" to the Court.  *United States v. Booker*, 125 S. Ct. 738 (2005).  Accordingly, the Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant

within the calculated guideline range.

(D.E 978 at p. 3.) (emphasis added.)

Duke affirmed that no one had forced or threatened him to get him to plead guilty and that he was pleading freely and voluntarily. (D.E. 1403 at p. 12.)  He also stated that the United States had not made any promises to him in connection with the guilty plea.  (*Id*.)

The Court then asked Duke whether he had carefully read pages 6, 7, 8, 9, and 10 of the plea agreement which detailed the ABT as an organization.  (*Id*. at p. 13.)  Duke affirmed that he had read the pages detailing the background of ABT in the plea agreement, and that the facts describing the ABT were true and correct.  (*Id*.)  The Court then asked Duke whether he had read pages 11 and 12 of the plea agreement which specifically discussed Duke's criminal involvement in the ABT. (*Id*. at pp. 13-14.)  Duke affirmed that he had, again, carefully read the pages and that the facts recited in the plea agreement were true, and that he had indeed done everything described in pages 11 and 12.[2]

---

[2] Pages 11 and 12 of the plea agreement referred to at the re-arraignment hearing contained "Facts of the Offense" which follows as below:

The Defendant agrees and stipulates that he knowingly conspired and

agreed to conduct the participate, directly, and indirectly, in the conduct of the affairs of the ABT ("Aryan Brotherhood of Texas") enterprise, that is a group of individuals associated in fact, through a pattern of racketeering activity, which was engaged in and the activities of which affected, interstate and foreign commerce, and that the ABT enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the ABT enterprise. The Defendant further agrees and stipulates that the ABT enterprise, through its members and associates, engaged in racketeering activity, namely, acts involving narcotics trafficking in violation of federal law and acts involving arson and murder in violation of Texas state law, as charged in the Second Superseding Indictment.

The Defendants admits to the following:

a.      At least as of 2009, and continuing to the date of the Second Superseding Indictment, the Defendant was an active member of the ABT in the Dallas/Fort Worth area.

b.      On or about July 27, 2011, the Defendant aided and abetted ABT gang member Jason Yates, aka "Rowdy" (Yates) to kill fellow ABT gang member Jason Head (Head). The Defendant wanted retribution against Head because he believed that Head was responsible for attempting to steal drugs from the Defendant and, in an attempted robbery, pointed a gun at the Defendant's father. In furtherance of the conspiracy, Yates and a female companion confronted Head at his home in the Dallas/Fort Worth area. Upon entering the residence, Yates pointed a handgun at Head's face and pulled the trigger. After an apparent misfire, Yates attempted to shoot Head two more times, but the handgun misfired on each occasion. A struggle ensued over the weapon, but Yates was able to secure the gun away from Head. Yates and his female companion then fled the scene. Yates obtained a different handgun and before he could return and kill Head, he was arrested on unrelated charges.

c.      On multiple occasions from 2010, and continuing to the date of the Second Superseding Indictment, the Defendant conspired with fellow ABT gang members and others to sell methamphetamine. During this period, the Defendant possessed with the intent to distribute at least 350 grams of methamphetamine.

9

Duke also affirmed that he discussed the plea agreement that he had just signed with Counsel for about an hour, that each and every single page of the plea agreement was re-explained to him, and that he and Counsel had negotiated the plea agreement with the United States. (*Id*. at pp. 14-15.)

After finding that Duke was fully competent and capable of entering into an informed plea, the Court found that his guilty plea was knowing and voluntary, supported by an independent factual basis. (*Id*. at p. 15.) The Court also expressly found that Duke's waiver of appeals was knowing and voluntary. (*Id*. at pp. 15-16.)

2. <u>Sentencing.</u>

In the PSR prepare, the probation officer assigned Duke a base offense level of 33 for one of the underlying racketeering acts, attempted murder of James Head. (PSR ¶57.) An additional two-level enhancement was added for being deemed an organizer, leader, supervisor, or manager. (*Id*. ¶60.) Duke's base offense level for conspiracy to distribute at least 350 grams of methamphetamine was

30.  (*Id.* ¶63.)  Although Duke's combined adjusted offense level was 36, Duke was deemed a career offender due to his criminal history pursuant to U.S.S.G. §4B1.1, and his offense level was increased to Level 37.  (*Id.* ¶76.)  Duke's lengthy criminal history netted him a Criminal History Category VI.  (*Id.* ¶¶92-94.)

Duke filed two objections to the PSR prior to the sentencing.  (D.E. 1220, 1221.)  Duke objected to the leader/organizer enhancement, to having the attempted murder be counted as part of the racketeering conspiracy that netted him a total offense level of 36, and to being characterized a career offender which resulted in a higher total offense level of 37, and to his criminal history calculation.  (*Id.*)  Duke also filed a sentencing memorandum in which he sought a downward departure based on his severe drug and alcohol abuse, emotional condition, lack of guidance as a youth, and for prompt acceptance of responsibility.  (D.E. 1229.)

A reduction of three levels was made for acceptance of responsibility.  (D.E. 1405 at p. 2)  With the reduction for acceptance of responsibility, Duke's total offense level was 34, Criminal History

Category VI, with an advisory guideline range of 262 to 327 months. (*Id.*)

The Court held a sentencing hearing on December 9, 2015.  (D.E. 1281, 1405.) Duke stated that he had read the PSR prior to sentencing and had discussed it with Counsel.  (D.E. 1405. at p. 3.)  Duke denied that he had ordered Jason Head be killed and argued that his base offense level should solely be driven by the drugs, and that the prosecutor had led him to think so.  (*Id*. at p. 12.)  When the Court pointed out to Duke that he had stated under oath at the re-arraignment hearing that the he agreed with the factual basis as recited by the government; the government had not made any other promises to him; and that the plea agreement accurately described the agreement with the government, Duke then agreed that "it wasn't a promise.  It was just a conversation.  It was a back-and-forth conversation over the three days when we came up with the plea agreement that I was willing to sign. . ." (*Id*. at pp. 14-15.)

The Court overruled all the objections filed by Duke, and adopted the presentence report in its entirety.  (*Id*. at pp. 3-4, 15)  The Court did

not revoke the three levels for acceptance of responsibility, but did explicitly state that Duke was not being credible. (*Id.* at p. 16.)

The Court then imposed a term of imprisonment of 216 months, the maximum allowed under the written plea agreement. (*Id.*) The sentence imposed was a significant variance from the correctly computed advisory guideline range of 262 to 327 months. The term of imprisonment was also to be followed by a five-year term of supervised release. (*Id.*) The Court did not impose a fine, but did impose $100 in special assessment costs. (*Id.* at p. 16.) The Court also granted the United States' motion to dismiss the remaining count of the indictment. (*Id.* at p. 17.) The Court reminded Duke that he had waived his right to appeal his conviction or sentence. (*Id.*) Duke did not file a notice of appeal.

## III.

## ISSUE

In the instant motion, Duke levies one claim of ineffective claim of counsel:

(1) Counsel was ineffective at the plea stage because he failed to

properly explain the consequences of pleading guilty to Count one, the racketeering charge, and failed to explain to Petitioner that his total offense level could be affected by the attempted murder charged in Count 17, and thus, his plea was not voluntary and knowing.

(D.E. 1453-1 at pp.6-8.)

Although Petitioner's written plea agreement contained a waiver of appeal, Petitioner contends that the waiver does not bar review of his instant claim because his plea was not knowing and voluntary. A defendant may always avoid a waiver of appeal on the limited grounds that the waiver or guilty plea itself was tainted by ineffective assistance of counsel. *United States v. White*, 307 F.3d 336, 339, 343 (5th Cir. 2002) (*citing United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995)). As Petitioner's claims as to Counsel's alleged failure to properly explain the consequences of pleading guilty directly concern the validity of a knowing and voluntary plea, the United States will not move to enforce the waiver of appeals as contained in the plea agreement but will move to dismiss the motion with prejudice because the United Statet's motion and the record, supported by the applicable law, conclusively show that

14

no relief, pursuant to 28 U.S.C. §2255, is appropriate.

## IV.

### A. Legal Authorities.

1.   <u>Grounds for Filing a 2255 Motion.</u>

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence:  (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. §2255; *United States v. Placente*, 81 F. 3d 555, 558 (5th Cir. 1996). Once an appeal of a conviction is exhausted or, if the right to appeal was waived, courts are "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (*citing United States v. Frady*, 456 U.S. 152, 164 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)).   "Relief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if

condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992.)

    2.   <u>Ineffective Assistance of counsel—Standard of Review.</u>

An ineffective assistance of counsel allegation in a §2255 motion is analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that his deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).

The Supreme Court has provided the following guidance with respect to assessing prejudice under the second prong of the *Strickland* test:

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 390 (2009) (*per curiam*) (slip op., at 13); *Strickland*,

16

> 466 U.S., at 693, 104 S. Ct. 2052. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696, 104 S. Ct. 2052. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052. ***The likelihood of a different result must be substantial, not just conceivable***. *Id.*, at 693, 104 S. Ct. 2052.

*Harrington v. Richter*, 562 U.S. 86, 111-12, 131 S. Ct. 770, 791-92 (2011) (emphasis added).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As *Strickland* cautions, scrutiny of counsel's performance must be highly deferential, lest it suffer "the distorting effects of hindsight." *Id.* at 689, 104 S. Ct. at 2065. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance" and that a challenged action "might be considered sound trial strategy." *Id.* (citation omitted).

In summary, to demonstrate deficient performance, a movant is required to show that in light of all the circumstances as they appeared at the time, "counsel's performance fell below an objective level of reasonableness." *Strickland*, 466 U.S. at 687-89, 104 S. Ct. 2052. If a tactical decision is "conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999); *see also United States v. Cavitt*, 550 F.3d 430 (5th Cir. 2008).

3.   <u>Involuntary Plea—Standard of Review.</u>

A plea of "guilty entered by one fully aware of the direct consequences" must stand "unless induced by threats," misrepresentation, or "by promises that are by nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). A criminal defendant's "reliance on the erroneous advice of

counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary." *United Sates v. Lucia*, 991 F.2d 179, 180 (5th Cir. 1993) (*citing United States v. Jones*, 905 F.2d 867 (5t Cir. 1990)).  "As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequence." *Jones*, 905 F.2d at 868.

As a safeguard to ensure that guilty pleas are knowing and voluntary, federal courts are required to question a defendant on the core issues of knowledge of the consequences of his plea and the voluntariness of the plea.  Fed. R. Crim. P. 11(b).  Courts give great weight to a defendant's statement during the plea colloquy.  *Blackledge v. Allison*, 431 U.S. 63, 73, 97 S. Ct. 1621, 52 L.Ed. 2d 126 (1977) ("Solemn declarations in open court carry a strong presumption of verity.")  *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002); *see also United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994) (placing great weight on defendant's statements during plea); *United States v. Martinez-Molina*, 64 F. 3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representation at plea hearing that he had not been

19

pressured).

    4. <u>Fed. R. Civ. P. 56</u>

The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986).

A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson*, 477 U.S. 242, 248. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. Therefore, summary judgment is proper if, under governing laws, there is only one

reasonable conclusion as to the verdict. If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Id*. at 249.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the resisting party to present affirmative evidence to defeat the motion. *Anderson*, 477 U.S. 242, 257. All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774 (2007). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## B.    Arguments.

### 1.    Duke cannot demonstrate that his plea was involuntary and unknowing.

Duke claims that Counsel failed to advise him that the attempted murder charge could still be used against him as a part of the

racketeering charge, and was misled to believe that his sentence would be in the 10-year range, despite the 216-month cap in the plea agreement. Duke claims that because of the misleading advice, he did not plea knowingly and voluntarily, and that there is a reasonable probability that he may have proceeded to trial had he been accurately advised by Counsel. Assuming *arguendo* that Counsel did not advise Duke that the attempted murder could still be used against him and would be factored in the advisory sentencing guidelines, Duke understood the consequences of his plea because he was well aware of the maximum term of imprisonment. Duke's claim is foreclosed by Fifth Circuit precedent which holds that as long as the defendant is advised of the maximum penalty which can be imposed, an attorney's erroneous prediction is an insufficient basis to render a guilty plea unknowing or involuntary. *See United States v. Pearson*, 910 F.2d 221 (5th Cir. 1990); *United States v. Gracia*, 983 F.2d 625, 629 (5th Cir. 1993). "A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did

not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002), *overruled on other grounds, Glover v. United States*, 531 U.S. 198, 203, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001). Thus, Duke cannot show that Counsel's alleged misadvice as to his sentence led to an involuntary and unknowing plea.

Furthermore, Duke's factual allegations are specifically contradicted by the record from the re-arraignment hearing. Duke's plea agreement specifically advised him that any estimate of probable sentence he received from Counsel, the U.S. Attorney's Office or probation was "only a prediction, not a promise . . . ." (D.E. 978 at ¶8.) The plea agreement further emphasized that the sentencing guidelines are only advisory and that the Court may impose a lower or higher sentence. (*Id.*) The Court also emphasized at the re-arraignment hearing that the decision regarding sentencing would be made by the Court at a later date after preparation of the PSR, and that Duke would be bound by the plea agreement and would not be allowed to withdraw his guilty plea as long as the Court did not impose a sentence of greater

than 216 months.   Duke also affirmed under oath that the United States had made no other promises to him and that he understood that the maximum penalty he was facing was up to life in prison.

Duke argues that an attorney's underestimation of a defendant's sentencing exposure results in ineffective assistance of counsel and cites *United States v. Herrera*, 412 F. 3d. 577, 580 (5th Cir. 2005), in support of his position.   *Herrera* can be easily distinguished from this case.   In *Herrera*, the petitioner alleged that his counsel misadvised him that he would face a maximum of 48 months if he were to accept the Government's plea offer, and a maximum of 51 months if he were to proceed to trial.   *Id*. Herrera proceed to trial, was convicted and given a sentence of 78 months, at the bottom of the advisory guideline range. *Id*. The Fifth Circuit in *Herrera* held that Herrera did not fully understand the consequences of going to trial if his attorney did not correctly advise him of the maximum penalty he could receive by proceeding to trial and remanded for an evidentiary hearing.   *Id*. at pp. 580-82.   Here, Duke was fully aware of the maximum penalty he could face by pleading guilty with the plea agreement, which was 216 months,

and of the maximum penalty he could face by proceeding to trial, which was life.  Unlike in *Herrera*, Counsel's alleged misadvice did not lead to Duke rejecting a favorable plea offer, proceeding to trial and receiving a much higher sentence that he had anticipated.  *Herrera* is inapplicable here.

Duke fails to demonstrate that his plea was unknowing and involuntary, therefore he is not entitled to relief under 28 U.S.C. § 2255 on this issue and this claim should be denied by the Court.

## VI.

## EVIDENTIARY HEARING

A section 2255 motion requires a hearing unless the Government's motion and the record of the case conclusively show that no relief is appropriate.  28 U.S.C. § 2255; Rule 8(a); *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983).  The need for an evidentiary hearing depends upon an assessment of the record.  If the Court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing.  If the record is adequate to fairly dispose of the allegations, the Court need inquire no further.  *United States v. Smith*, 915 F.2d

959, 964 (5th Cir. 1990).

Petitioner has failed to allege any facts that would demonstrate a finding that Counsel rendered constitutionally infirm assistance. The Court can resolve the issue on the record before the Court.

## VII.

## <u>CONCLUSION</u>

On the basis of the foregoing, the Government moves the Court to grant the Government's motion to dismiss based on Petitioner' failure to show both deficiency and prejudice as required by *Strickland*. A Certificate of Appealability should be denied.

<div style="margin-left:40%">

Respectfully sworn and submitted,
KENNETH MAGIDSON
UNITED STATES ATTORNEY

By:   /s/ Sonah Lee
     SONAH LEE
     Assistant United States Attorney
     Attorney for Respondent

</div>

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a copy of the foregoing Response To Motion for Relief under 28 U.S.C. § 2255, was electronically filed via ECF with the U.S. District Court and delivered to the attorney for the petitioner on this the 26th day of February 2016 via ECF.


/s/ Sonah Lee
SONAH LEE
Assistant United States Attorney

27