UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUSTY EUGENE DUKE, | § | |
| | § | |
| Movant/Defendant, | § | |
| | § | CIVIL ACTION NO. H-15-3692 |
| v. | § | (CRIMINAL NO. H-12-272-07) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent/Plaintiff. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Rusty Eugene Duke, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 1453). On June 9, 2016, the court held an evidentiary hearing on the motion. After carefully considering the evidence and the parties' arguments, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1).

### Findings of Fact

1. On February 20, 2013, a grand jury in this District returned an 18-count second superseding indictment (the "Indictment") charging Rusty Eugene Duke and 35 other defendants with various crimes based on their membership in or association with the Aryan Brotherhood of Texas ("ABT"). (Docket Entry No. 469)

2. The ABT is "whites-only" prison-based gang, primarily operating in Texas, which functioned as a criminal organization involved in narcotics trafficking, gambling, murder, arson, and assault.

3. The Indictment charged that the ABT was an "enterprise" as defined in Title 18, United States Code, Section 1961(4), that engaged in and whose members engaged in "racketeering activity," as defined in Title 18, United States Code, Section 1961(1).

4. Count One of the Indictment charged Duke with conspiring to participate in racketeering activity, in violation of Title 18, United States Code, Section 1962(d).

5. The statutory maximum term of imprisonment for the offense charged in Count One is life in prison for life.

6. Count 17 of the Indictment charged Duke with the attempted murder of Jason Head, a violent crime in aid of racketeering activity in violation of Title 18, United States Code, Section 1959(a)(5) and 2.

7. The statutory maximum term of imprisonment for the offense charged in Count Seventeen is ten years in prison.

8. In proceedings before this court through sentencing Duke was represented by Robert A. Jones, Esq. ("Counsel").

9. After the filing of the Indictment and as a trial date approached, Duke and his Counsel engaged in plea discussions with the United States.

10. In an initial plea offer, the United States proposed that Duke plead guilty to Count One of the Indictment pursuant to a plea agreement in which the parties would agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that a sentence of not more than 240 months was appropriate.

11. Duke, through his Counsel, sought to secure a plea agreement that would limit Duke's maximum sentence to 120 months and Duke's Counsel sent a counterproposal to the United States suggesting such a limitation.

12. The United States rejected Duke's proposed 120-month cap on his sentence, responding, in substance, that neither the United States Attorney's Office in this District, nor the Department of Justice would agree to such a low maximum sentence.

13. The United States ultimately offered Duke a plea agreement, pursuant to Rule 11(c)(1)(C) in which the parties agreed that "any term of imprisonment imposed by the Court in this case should not exceed 216 months" (*i.e.*, 18 years) and that if this court were to reject the plea agreement Duke would be allowed to withdraw his plea of guilty. After discussing this plea agreement with his Counsel, Duke accepted it.

14. On August 13, 2014, Duke appeared, with Counsel, for rearraignment and pleaded guilty to Count One of the Indictment pursuant to a written plea agreement with the United States.

15. The written Plea Agreement (Docket Entry No. 978) provided, in relevant part, that:

   a. Duke would plead guilty to Count One of the Indictment and the United States would move to dismiss the remaining count of the Indictment at sentencing (¶¶ 1 and 10(b));

   b. The statutory maximum term of imprisonment for the crime charged in Count One is life in prison (¶ 2);

   c. The parties agreed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that "any term of imprisonment imposed by the Court in this case should not exceed 216 months" and that if this court were to reject the plea agreement Duke would be allowed to withdraw his plea of guilty (¶ 10(a));

   d. Paragraph 8 of the Plea Agreement stated:

   In agreeing to these waivers, the Defendant is aware that a sentence has not yet been determined by the Court. the Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the

-4-

Defendant will receive. The Defendant further understands and agrees that the *United States Sentencing Guidelines* (USSG) are 'effectively advisory' to the Court. . . . Accordingly, the Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.;

e. Paragraph 26 of the Plea Agreement stated:

This written plea agreement, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant and his counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.;

f. Duke was aware of his right to appeal his sentence and to collaterally attack his conviction or sentence pursuant to 28 U.S.C. § 2255, and he knowingly and voluntarily waived those rights (¶ 7).

16. In an addendum to the Plea Agreement, Duke stated, "I have read and carefully reviewed every part of the plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms." (Plea Agreement, Docket Entry No. 978, p. 18)

17. At his rearraignment on August 13, 2014, the following colloquy occurred between Duke and the court:

    THE COURT: Would you state your name, please, sir.

    DEFENDANT: Rusty Duke.

    THE COURT: Mr. Duke, I understand that you wish to plead "guilty" to Count 1 of the second superseding indictment pursuant to a written plea agreement. Count 1 charges you with conspiracy to participate in racketeering activity, a violation of Title 18, United States Code, Section 196(d). Is that correct?

    DEFENDANT: Yes, sir, it is.

    THE COURT: Since your right hand is in a sling, could you please raise your left hand and be sworn.

    (Defendant sworn)

    THE COURT: Mr. Duke, before I can accept your plea I must ask you a number of questions. It is very important that you listen carefully to all of my questions and that you answer all of my questions truthfully and completely for several reasons.

    First, since you are now under oath, if you gave an untrue answer to a question, you could be charged with the separate crime of perjury. Do you understand that?

    DEFENDANT: Yes, sir.

    THE COURT: Also, before I can accept your plea I must make a number of findings. My findings are based on your answers to my questions. In order for my

|||
|---|---|
| | findings to be correct it is, therefore, necessary that all of your answers to my questions be truthful and complete. Do you understand that? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Will you agree with me this morning that if you do not understand anything that I say you will stop and ask me to repeat or explain whatever you do not understand? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Also, you may stop at any time and speak with Mr. Jones, your attorney. You do not need anyone's permission to speak with him. How old are you? |
| DEFENDANT: | 33 year old today. |
| THE COURT: | Where were you born? |
| DEFENDANT: | Dallas Texas, Baylor. |
| THE COURT: | Did you graduate from high school? |
| DEFENDANT: | Yes, sir, I did. |
| THE COURT: | After you graduated from high school did you receive any other type of formal training or education? |
| DEFENDANT: | A few college hours. |
| | . . . |
| THE COURT: | How many times have you spoken with your attorney about this case? |
| DEFENDANT: | I have seen him -- I can't really -- I can't keep a certain amount of number. He's been there, though. |
| THE COURT: | More than 20 times? |
| DEFENDANT: | Oh, I don't know if it's been that many, but it's somewhere in that area. |

THE COURT: More than ten?

DEFENDANT: I'd say so.

THE COURT: All right. Has your attorney discussed with you the charges against you and what the Government would have to prove to establish your guilt?

DEFENDANT: Yes, sir, he has.

THE COURT: Has he reviewed with you the evidence that the Government has against you?

DEFENDANT: Yes, sir.

THE COURT: Has your attorney discussed with you how the Federal Advisory Sentencing Guidelines might apply in your case?

DEFENDANT: Yes, sir, he has.

THE COURT: Has your attorney answered all of your questions?

DEFENDANT: Yes.

THE COURT: Has he done everything that you have asked him to do?

DEFENDANT: Yes, sir.

THE COURT: Are you fully satisfied with the advice and counsel that your attorney has provided you?

DEFENDANT: Yes, sir. I am.

. . .

THE COURT: . . . The maximum sentence for Count 1 of the indictment is life in prison, and a fine of $250,000, and forfeiture of all property acquired or maintained in violation of the enterprise, and five years of supervised release and a one-hundred-dollar special assessment. Do you understand that?

DEFENDANT: Yes, sir.

. . .

THE COURT:      No determination has been made about what your sentence will be. If I accept your guilty plea, a probation officer will interview you, investigate the facts of the case and prepare a presentence investigation report. You will have an opportunity to read the report and to discuss the report with your attorney before your sentencing. You or the Government may file objections to the presentence report if you wish. At the time of your sentencing I will rule on any objections to the report, and then I will determine your advisory guideline range and your sentence.

Except as to the limitation that your sentence not exceed 216 months, as stated in the plea agreement, no determination has been made about what your sentence will be. As long as I don't sentence you to more than 216 months, you will be bound by your guilty plea today regardless of the sentence. Do you understand that?

DEFENDANT:      Yes, sir, I do.

THE COURT:      The Government has provided me with a copy of a written plea agreement. Have you read the agreement?

DEFENDANT:      Yes, sir, I have.

THE COURT:      When did you read it?

DEFENDANT:      Just here about ten minutes ago with my attorney.

THE COURT:      You've only spent ten minutes reading it?

DEFENDANT:      Well, with the corrections, yes, sir.

THE COURT:      Have you read prior versions of it?

DEFENDANT:      Yes, sir, I have.

THE COURT:      When have you read the versions?

DEFENDANT:      Yesterday and weeks in advance.

THE COURT: How long would you estimate altogether you have spent reading the agreement and discussing it with your attorney?

DEFENDANT: Every day since the very first one I got.

THE COURT: Would you estimate you have spent at least five hours reviewing it and discussing it with your attorney?

DEFENDANT: More.

THE COURT: All right. Do you have a copy there before you?

DEFENDANT: Yes, sir.

THE COURT: Of the final version, has your attorney answered any questions you may have had about it?

DEFENDANT: Yes, sir, he has.

THE COURT: Let's go over it again just to be sure you understand it.

. . .

THE COURT: If you will please turn to Page 4. Paragraph 10(a) says: "Pursuant to Rule 11(c)(1)(C) the parties agree that any term of imprisonment imposed by the Court in this case should not exceed 216 months. Pursuant to 11(c)(5), if the Court rejects this plea agreement, the Defendant will be allowed to withdraw his guilty plea."

I am going to accept the plea agreement. That means that, as long as your sentence does not exceed 216 months, you will be bound by the plea agreement. Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: The Government agrees it will dismiss Count 17. The Government agrees that you're entitled to a two-level downward adjustment for acceptance of responsibility. And the Government agrees that, if your offense level is 16 or more, the Government will move for an additional one-level downward adjustment.

|              | If you will please turn to Page 14.  Paragraphs 21 and 23 state that you will forfeit to the government the property listed in paragraph 21 and that you consent to the order of forfeiture becoming final following your guilty plea today. |
|---|---|
|              | Now, other than the factual basis for your guilty plea, which I will discuss in a moment, have I correctly described your plea agreement with the United States Government as you understand it? |
| DEFENDANT:   | Yes, sir, you have. |
| THE COURT:   | Other than what is stated in this written plea agreement has the United States Government made any promises to you in connection with your guilty plea? |
| DEFENDANT:   | No, sir. |
| THE COURT:   | Has anyone threatened you or forced you to plead "guilty"? |
| DEFENDANT:   | No, sir. |
|              | . . . |
| THE COURT:   | Mr. Jones, do you believe that any other advice is required to your client before I can accept his plea? |
| MR. JONES:   | No, sir, Your Honor, other than, as a caveat to include to the Court that Mr. Duke's comments that he only received his plea agreement ten minutes ago, better than an hour and a half ago: We were talking inside of the Marshal Service. A copy of the plea agreement was handed to the Marshal Service to give to him.  However, since our conversation lasted some 50 minutes, he did not have a copy in his hand.  However, we went over it, and each and every page of that document was re-explained. |
|              | We have participated together in carving out what it is we believe would be a more representative and adequate plea charge, changing various paragraphs, suggesting changes, speaking with the Government and ensuring that those changes were made to the satisfaction of Mr. Duke.  And then |

-11-

>   ten minutes ago, as he was in the courtroom, they
>   finally retrieved it after I questioned him as to
>   whether or not he had, in fact, gotten a copy.
>
> THE COURT: I would have expected no less from you, Mr. Jones.
>
>   Mr. Duke, is Mr. Jones' recitation of what occurred regarding the plea agreement correct?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: You and the attorneys may now sign the plea agreement.
>
>   (Plea agreement executed)
>
> THE COURT: It is the finding of the Court that Rusty Eugene Duke is fully competent and capable of entering an informed plea, that his plea of "guilty" is a knowing and voluntary plea supported by an independent basis in fact establishing each of the essential elements of the offense. I expressly find that the Defendant's waiver of his right to appeal his conviction, the Defendant's waiver of his right to appeal his sentence or the manner in which it was imposed and the Defendant's waiver of his right to collaterally attack his conviction or sentence are knowing and voluntary waivers. Therefore, I accept your plea and now adjudge you guilty.

Transcript of August 13, 2014, Rearraignment, Docket Entry No. 1403, pp. 2-4, 5-12, and 14-16.

18. Duke's statements during his rearraignment were credible. Although at the June 9, 2016, hearing Duke attempted to disavow some of his sworn testimony at his rearraignment, the court does not find Duke's testimony at the June 9, 2016, hearing to be credible.

19. In the Presentence Investigation Report ("PSR") the probation officer concluded that Duke was subject to the "Career

-12-

Offender" provision set forth at Section 4B1.1(b)(1) of the United States Sentencing Guidelines, resulting in an offense level of 37 and a criminal history category of VI. (PSR, Docket Entry No. 1191)

20. The probation officer later determined that Duke was entitled to a three-offense-level reduction, pursuant to U.S.S.G. § 3E1.1, yielding a final offense level of 34. (Addendum to PSR, Docket Entry No. 1193)

21. Duke's Counsel filed Objections to the PSR (Docket Entry No. 1220) and Supplemental Objections to the PSR (Docket Entry No. 1229).

22. At sentencing the court overruled Duke's objections and held that Duke's total offense level was 34 and his criminal history category was VI, which resulted in an advisory Guidelines range of 262-327 months in prison.

23. The court sentenced Duke to 216 months in prison, consistent with the parties' plea agreement.

24. At sentencing Duke complained that he had expected to receive a sentence "in the 10-year range," although he acknowledged that such a sentence "wasn't a promise." (Transcript of December 9, 2014, Sentencing, Docket Entry No. 1405, p. 15)

25. Duke did not seek to withdraw his guilty plea at his sentencing hearing, nor did he file an appeal.

26. On December 22, 2015, Duke filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 1453) ("§ 2255 Motion").
27. In his § 2255 Motion Duke claims that his guilty plea was invalid because his Counsel provided ineffective assistance.
28. Specifically, Duke asserts that he was "mislead to believe" that by pleading guilty to count 1 his "sentence would be in the 10-year range" because the "driving force of the racketeering charge would be methamphetamine, not the attempted murder of Jason Head." (Declaration of Rusty Eugene Duke, Docket Entry No. 1479-1, ¶¶ 6 and 7)
29. At the June 9, 2016, evidentiary hearing Duke testified in a rambling, inconsistent manner that his attorney, Robert Jones, had told Duke before the rearraignment that his guideline range would be based on the methamphetamine for which he would be responsible instead of his attempted murder of Jason Head. Duke testified that he pled guilty because he thought he would receive a sentence of ten years. Duke also testified that Assistant United States Attorney Timothy Braley told him before his arraignment that he would receive a ten-year sentence and that he should not respond truthfully to the court's questions at his rearraignment. Jones and Braley denied ever making any such statements. The court does not find Duke's testimony to be credible. The court concludes that he lied at the evidentiary hearing concerning the

statements that he attributed to Jones and Braley. The court finds the testimony of Jones and Braley to be credible.

30. There is no credible evidence that Duke was promised a ten-year sentence (or any other sentence below 216 months) in order to induce his guilty plea.

## Conclusions of Law

1. To prevail on his claim of ineffective assistance of counsel Duke must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 104 S. Ct. 2052, 2064 (1984), which requires him to establish that his counsel's performance was deficient and that he suffered prejudice as a result.

2. "The performance prong of <u>Strickland</u> requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks and citation omitted). "Therefore, courts may not fall prey to 'the distorting effect of hindsight' but must be 'highly deferential' to counsel's performance. Hence, there is a strong presumption that the performance 'falls within the wide range of reasonable professional assistance.'" <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) (quoting <u>Strickland</u>, 104 S. Ct. at 2065-66). The burden is on the defendant to overcome this presumption. <u>Id.</u>

3. To establish prejudice under <u>Strickland</u> a defendant must "show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The burden is on the defendant to affirmatively prove prejudice. Strickland, 104 S. Ct. at 2067.

4. A defendant's "reliance on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary." United Sates v. Lucia, 991 F.2d 179, 180 (5th Cir. 1993). "As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequence." Id., quoting United States v. Jones, 905 F.2d 867, 868 (5th Cir. 1990).

5. The Plea Agreement and rearraignment transcript reflect that at the time of his plea Duke was aware of the maximum punishment that he faced, both under the statute of conviction and the plea agreement. Duke's "Solemn declarations in open court [during rearraignment] carry a strong presumption of verity," and he has offered no credible evidence undermining that presumption. Blackledge v. Allison, 97 S. Ct. 1621, 1629 (1977).

6. The evidence establishes that Duke was not promised a sentence lower than 216 months — or any other particular sentence — in

-16-

order to induce his guilty plea. Duke's plea "is not rendered involuntary by [his] mere subjective understanding that he would receive a lesser sentence." Daniel v. Cockrell, 283 F.3d 697, 703 (5th Cir. 2002). "[I]f the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." Id. citing Spinelli v. Collins, 992 F.2d 559, 561-62 (5th Cir. 1993).

7. Duke has not shown that his Counsel, Robert Jones, was deficient. Jones carefully discussed with Duke various proposed plea agreements, negotiated with the government to achieve a sentence below the advisory guideline range that Duke faced, and carefully reviewed the terms of the final Plea Agreement with Duke. Jones made no promises, representations, or statements to Duke that were inconsistent with the Plea Agreement.

8. To establish prejudice, Duke must show that "but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial" and that going to trial "would have given him a reasonable chance of obtaining a more favorable result" (i.e., a sentence of less than 216 months). United States v. Batamula, --- F.3d ---, 2016 WL 2342943, *2 (2016) (en banc) (internal citation and quotation omitted).

9. Duke makes a cursory assertion that he would have gone to trial but for the alleged ineffective assistance of his

order to induce his guilty plea. Duke's plea "is not rendered involuntary by [his] mere subjective understanding that he would receive a lesser sentence." Daniel v. Cockrell, 283 F.3d 697, 703 (5th Cir. 2002). "[I]f the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." Id. citing Spinelli v. Collins, 992 F.2d 559, 561-62 (5th Cir. 1993).

7. Duke has not shown that his Counsel, Robert Jones, was deficient. Jones carefully discussed with Duke various proposed plea agreements, negotiated with the government to achieve a sentence below the advisory guideline range that Duke faced, and carefully reviewed the terms of the final Plea Agreement with Duke. Jones made no promises, representations, or statements to Duke that were inconsistent with the Plea Agreement.

8. To establish prejudice, Duke must show that "but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial" and that going to trial "would have given him a reasonable chance of obtaining a more favorable result" (i.e., a sentence of less than 216 months). United States v. Batamula, --- F.3d ---, 2016 WL 2342943, *2 (2016) (en banc) (internal citation and quotation omitted).

9. Duke makes a cursory assertion that he would have gone to trial but for the alleged ineffective assistance of his

Counsel. That bald assertion, however, does not meet his burden of establishing prejudice. Batamula, 2016 WL 2342943 at *3. Instead, Duke must "demonstrate that going to trial [on the two Counts charged in the Indictment] would have given him a reasonable chance of obtaining a more favorable result," i.e., a sentence of less than 216 months. Duke has not attempted to meet that burden.

10. Duke's PSR outlines some of the evidence that would have been presented at Duke's trial. Duke made no effort to explain how, in light of such evidence, there is a "reasonable chance" that a rational defendant would have rejected the plea agreement, or that, if he did so, he would have either been acquitted at trial or received a lesser sentence. Accordingly, Duke has not satisfied the "prejudice" prong of the ineffective-assistance-of-counsel analysis. Batamula, 2016 WL 2342943 at *3.

11. The record contains strong evidence that, if Duke had rejected the Plea Agreement, "going to trial would have increased the length of his sentence." As reflected in the PSR and sentencing transcript, Duke's conviction in this case, coupled with his criminal history, subjected him to the "Career Offender" provision set forth at Section 4B1.1 of the Sentencing Guidelines. Pursuant to that provision his Offense Level was 37 and his Criminal History Category was VI, which yielded an advisory guideline range of 360 months to life

imprisonment. (Had Duke gone to trial he would not have been entitled to a reduction in his offense level for acceptance of responsibility.)

12. Duke has not shown, or attempted to show, that there is any "reasonable chance" that this court would have sentenced him to less than 216 months' imprisonment if his Guidelines range were 360 months to life. Batamula, 2016 WL 2342943 at *2.

13. Because Duke has not satisfied either the performance prong or the prejudice prong under the Strickland test, he has not met his burden of showing that his guilty plea was influenced by ineffective assistance of counsel.

14. The Plea Agreement is valid and enforceable.

If any finding of fact should more properly be characterized as a conclusion of law, the court adopts it as such. If any conclusion of law should more properly be characterized as a finding of fact, the court adopts it as such.

**SIGNED** at Houston, Texas, on this the 16th day of June, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE